UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
DEAN SANDY,

               Petitioner,        **MEMORANDUM AND ORDER**

              - against -         05-CV-1994 (ENV)

SUPERINTENDENT JOHN DONELLI, and
THE STATE OF NEW YORK,

               Respondents.
-----------------------------------------------------------------X

**VITALIANO, D.J.**

*Pro se* petitioner Dean Sandy seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his state court convictions: one count each of attempted robbery in the first and second degree, N.Y. Penal Law §§ 160.15[3], 160.10[1], and two counts of assault in the second degree, N.Y. Penal Law § 120.05[2], [6]. His petition is grounded on four theories of relief: (1) the trial court wrongly denied his objection that "black females" were improperly excluded from the jury through peremptory challenges, in violation of Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712 (1986); (2) there were other "fatal flaws" in the jury selection process; (3) the charge given to the jury on reasonable doubt was improper; and (4) there was an "impermissible variance" between the charges in the indictment and the proof at the trial. For the reasons set forth below, the writ is denied and the petition is dismissed.

## Background

### A. Events Leading to Arrest

The following evidence was adduced by the prosecution at petitioner's trial, People v. Sandy, Indict. No. 8326/00 (Sup. Ct. Kings County 2000).

In the early morning hours of September 30, 2000, Dunbar Goodings was walking on a Brooklyn street when petitioner and co-defendant Davon Lowe pulled up in a pickup truck, got out and physically assaulted him. After Lowe put a knife to Goodings' back, petitioner punched Goodings in the face and asked how much money he had. When Goodings explained that he only had $10, Lowe stabbed him in the head and petitioner forced him into the passenger side of the truck. As petitioner ran around the rear of the truck, Goodings reached over and locked the driver side door. Goodings then ran out of the passenger side and managed to escape after a brief struggle. Lowe and Sandy fled the scene.

Goodings called 9-1-1 from a nearby pay phone. Soon after, he provided the responding officers with a description of the assailants and their vehicle. In a short time, a patrol car spotted petitioner's truck and pulled it over. Upon inspection of the interior, the patrol officers spotted blood stains on the seat and two knives on the floor. When Goodings arrived at the scene, he identified Lowe and Sandy as the two men who tried to rob him. Later, at the hospital, Goodings identified a blood-stained knife retrieved from the truck as the one that was used to stab him. After the police matched the blood on the knife to Goodings' DNA sample, petitioner and Lowe were both indicted on charges of attempted robbery in the first, second, and third degree, and assault in the second and third degree.

**B.   Trial**

   1. Jury Selection

Sandy and Lowe were jointly tried in Supreme Court, Kings County, with jury selection beginning on April 22, 2002. Of the initial 14 prospective jurors questioned by the court and by counsel on *voir dire*, two were removed for cause, and seven were peremptorily challenged – two by the prosecution and five by the defense. In the next grouping of 14 prospective jurors,

three were removed for cause or on consent. The prosecution and defense then each exercised four peremptory challenges, with all four of the prosecution's being directed at black women. At the point of the Batson objection, the jury consisted of eight people, three of whom were black women. The objection was advanced in the following exchange:

> [Counsel]: [E]very preempt exercised in this round by the people was of a young Black female.
>
> The Court: Young? I don't think they're all young. Some of them are Black, but they're not all young. How do you know that? We didn't even ask people's ages.
>
> [Counsel]: Well, based on my observation.
>
>     \*  \*  \*
>
> [Currently, on the jury w]e have a foreman who is a male Black; then a female White, and we have a female White, we have a female Black, we have a female Black, we have a female Black, and a male White.[1] That's what the –
>
> [Counsel]: It's not the overall composition that counts.
>
> The Court: This is true because there are cases – are you making a Batson challenge?
>
> [Counsel]: Yes, Judge.
>
> The Court: It's disallowed. I don't see any nature for a Batson charge, for either side.

(Transcript of Proceedings, People v. Sandy, Indict. No. 8326/00 (Kings County Ct.) ("Tr.") at 297-298.)

2. Jury Charge

On April 29, 2002, the case went to the jury on all counts. Among the instruction to the jury, the court charged that the presumption of innocence "is one of the most important safeguards in this country under our law," and that a criminal defendant is "presumed to be innocent and the People must prove his guilt beyond a reasonable doubt." (Id. at 634.) The

---

[1] Although the court only described seven jurors, eight were already seated at this point.

court continued that, "[t]he People have the burden of proving the defendants guilty as to every fact and every element essential to convict. The burden never shifts. No defendant has to prove his innocence." (Id. at 635.) The court's specific instruction on "reasonable doubt" was, in pertinent part, as follows:

> [I]t's [a] constitutionally-mandated . . . standard of proof. . . . This standard of proof requires by law in every criminal case that the proof of guilt be beyond a reasonable doubt. The standard, however, does not require the People to prove these defendants guilty beyond all possibility of a doubt or beyond a shadow of a doubt. We understand that that would be impossible. It requires the People to establish the defendants guilty beyond a reasonable doubt.
>
> Our law therefore requires that before you, the jury, may convict the defendant, each of you must be satisfied that the credible evidence is sufficient to convince you beyond a reasonable doubt that the defendants or one of the defendants is in fact guilty. The evidence must satisfy you beyond a reasonable doubt that the defendants or one of the defendants is in fact the person who committed the crimes charged. The evidence must also establish beyond a reasonable doubt each and every essential element of the crimes that I'm going to give you and I will define every crime to you.
>
> A doubt of the defendant's guilt to be a reasonable doubt must be a doubt for which some reason can be given. . . . The doubt to be reasonable must therefore arise because of the nature and the quality of the evidence in the case or from the lack or insufficiency of the evidence in the case. The doubt to be reasonable should be one which a reasonable person acting in matters of this importance would be likely to entertain because of the evidence or because of the lack or insufficiency of the evidence. A doubt of guilt is not a reasonable doubt when instead of being based on the nature and the quality of the evidence or the insufficiency of the evidence, it is based on some guess, or whim, or speculation unrelated to the [] evidence in the case. Also, a doubt is not a reasonable doubt if it is based merely on sympathy for the defendants or defendant, or for a mere desire by a juror to avoid a disagreeable duty. . . .

(Id. at 636-38.)

In crafting the charge, the court effectively copied a model instruction on "reasonable doubt" prepared by the Committee on Criminal Jury Instructions of the New York State Office of Court Administration ("CJI"). However, defense counsel correctly pointed out that a short portion of that model charge, C.J.I. (N.Y.) 6.20 (2d ed. 1996), was absent from the court's instruction as read to the jury, and asked the court to read the missing paragraph, as follows:

4

> A "reasonable doubt," our law says, is an actual doubt, one which you are conscious of having in your mind after you have considered all the evidence in the case. If, after doing so, you then feel uncertain and not fully convinced of the defendant's guilt, and you are also satisfied that in entertaining such a doubt you are acting as a reasonable person should act in a matter of this importance, then that is a "reasonable doubt" of which the defendant is entitled to the benefit.

(Tr. at 665-66.) The court responded to the objection by telling counsel (erroneously) that it had read that portion aloud, and rebuffed counsel's attempt to show it a copy of the full CJI charge. The court also declined Lowe's counsel's invitation to charge the jury that they should find the defendants not guilty "if [they] feel uncertain and not fully convinced of the defendants' guilt." (Id. at 666-67.)

On May 14, 2002, the jury convicted petitioner on one count each of attempted robbery in the first degree and second degree, and two counts of assault in the second degree. That same day, the court sentenced him to an eight-year prison term for the attempted first-degree robbery, and concurrent seven-year terms for the attempted second-degree robbery and second-degree assault counts.

## C. Appeal

On appeal to the Appellate Division, Second Department, petitioner argued that the prosecution's peremptory challenges against black women violated Batson and that the court's jury instruction on reasonable doubt denied him a fair trial.[2] Petitioner also joined in two additional arguments that Lowe made in a separate appeal. First, Lowe argued that there were other "fatal flaws" in the jury selection process, including that: (1) the trial court improperly

---

[2] The Batson challenge at trial described the excluded class as "young" black females (id. at 297), but on appeal, Sandy dropped the objection insofar as it concerned the challenged jurors' ages. In any event, age is not a juror trait upon which a Batson claim can be premised. See J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 143, 114 S. Ct. 1419, 1429 (1994) (stating that "[p]arties may also exercise their peremptory challenges to remove from the venire any group or class of individuals normally subject to 'rational basis' review"); Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 120 S. Ct. 631 (2000) (holding that lines drawn on basis of age are subject to rational basis review).

delegated its authority to "non-judicial personnel," who screened and excused prospective jurors before jury selection began; and (2) the trial court's remarks to the jury panel that it would not entertain "all the reasons why you shouldn't be here and you can't stay on the jury" (Tr. at 36), "restricted the flow of information necessary for determination of challenges." Second, Lowe contended that there was an "impermissible variance" between the charges in the indictment and the proof at trial insofar that the evidence at trial revealed that petitioner and Lowe not only demanded to know if Goodings had money, as set forth in the indictment, but also if he had an ATM card.

On October 4, 2004, the Second Department affirmed Sandy's conviction, rejecting his arguments that the prosecution violated Batson during jury selection and that the trial court's reasonable doubt instruction denied him a fair trial.[3] The court held that, although petitioner alleged that all of the prosecution's second round peremptory challenges were used to challenge black females, he failed to make out a prima facie case that the challenges were "exercised for a discriminatory purpose," because "sheer numbers or a disproportionate number of strikes are rarely dispositive of the issue of whether there was purposeful discrimination." People v. Sandy, 11 A.D.3d 489, 489, 782 N.Y.S.2d 790, 791 (2004) (citing to New York case law). The court also held that the jury charge "as a whole . . . adequately conveyed the concept of reasonable doubt to the jury." Id., 11 A.D.3d at 490, 782 N.Y.S.2d at 791. Finally, the court held that petitioner's other contentions were "unpreserved for appellate review and, in any event [were] without merit." Id. Petitioner's application for leave to appeal was denied by the Court of

---

[3] On the same day, the Second Department affirmed Lowe's conviction, holding that his reasonable doubt claim was meritless and that his remaining contentions were unpreserved for appellate review. People v. Lowe, 11 A.D.3d 484, 782 N.Y.S.2d 374 (2d Dep't 2004). Lowe, apparently, did not seek a further appeal.

Appeals on November 28, 2004. People v. Sandy, 3 N.Y.3d 760, 788 N.Y.S.2d 677, 821 N.E.2d 982 (2004).

## Discussion

The petition before the Court was filed on April 12, 2005, and is grounded in the same four theories of relief asserted in petitioner's (and Lowe's) state appellate briefs. The People concede that the petition was timely filed.[4]

### A. The AEDPA Standard of Review

Under the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a writ of habeas corpus shall not issue with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication (1) was contrary to or involved an unreasonable application of clearly established federal law, as determined by the United States Supreme Court; or (2) was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d); see Gutierrez v McGinnis, 389 F.3d 300, 304 (2d Cir. 2004) (describing this standard as "AEDPA deference"). A state court decision is "contrary to" established federal precedent if it "contradicts the governing law set forth in [Supreme Court] cases" or arrives at a different conclusion from the Supreme Court on "materially indistinguishable" facts. Williams v. Taylor, 529 U.S. 362, 405, 120 S. Ct. 1495, 1519-20 (2000) (O'Connor, J., for the Court, Part II). A state court decision involves an "unreasonable application" of federal law if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of" that case. Id. at 413. Further, the state court's application of Supreme Court precedent must have

---

[4] Petitioner initially raised an additional claim for relief that the"[p]rosecutor and the Judge acted unprofessional[ly]" by improperly joining his trial with Lowe's. Following briefing of the habeas claims, petitioner voluntarily withdrew this claim on the basis that it was unexhausted in state court. (See Dkt # 10.)

been "objectively unreasonable" for a writ to issue. Id. at 409; see Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (explaining that the standard requires "[s]ome increment of incorrectness beyond error"). In addition, "a state court's findings of fact are 'presumed to be correct' unless rebutted 'by clear and convincing evidence.'" Drake v. Portuondo, 553 F.3d 230, 239 (2d Cir. 2009) (quoting 28 U.S.C. § 2254(e)(1)).

**B.     Procedural Bar**

A district court considering a habeas petition may not review a claim if the last state court to consider the claim "clearly and expressly rel[ied] on an independent and adequate state ground" to deny relief, such as a procedural bar. Coleman v. Thompson, 501 U.S. 722, 735, 111 S. Ct. 2546, 2557 (1991); see Lisojo v. Rock, No. 09-CV-7928, 2010 U.S. Dist. LEXIS 31152, at *65-*66 (S.D.N.Y. Mar. 31, 2010). In this case, the Second Department explicitly considered and rejected petitioner's Batson and jury charge claims on their merits. However, with respect to his "fatal flaws" and "impermissible variance" claims, the court only found, without further elaboration, that they were "unpreserved, and, in any event, without merit." The Court construes this language to express the state court's reliance on a procedural bar. See Slavin v. Artus, No. 05-CV-0870, 2010 U.S. Dist. LEXIS 2939, at *28 (E.D.N.Y. Jan. 13, 2010) ("[E]ven when a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted.") (quoting Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005)); Blackman v. Ercole, No. 06-CV-855, 2009 U.S. Dist. LEXIS 117612, at *8 (E.D.N.Y. Dec. 17, 2009) (same). Specifically, petitioner failed to preserve these two claims for appeal by not complying with New York's "contemporaneous objection" rule, N.Y. Crim. Proc. Law § 470.05[2], which unquestionably serves as an independent and adequate basis to preclude federal habeas review. See Murray v. Carrier, 477 U.S. 478, 485-92, 497, 106 S. Ct. 2639, 2644-

48, 2650 (1986); Garvey v. Duncan, 485 F.3d 709, 720 (2d Cir. 2007); Stewart v. Greene, No. 05-CV-0566, 2009 U.S. Dist. LEXIS 108685, at *5 (S.D.N.Y. Nov. 19, 2009). This court is therefore without the power to adjudge the merits of the "fatal flaws" and "impermissible variance" theories of relief on habeas review, and those claims must be rejected.[5]

## C. Batson Claim

Petitioner argues that the prosecution improperly used its peremptory challenges against black women. In Batson v. Kentucky, the Supreme Court held that "[p]urposeful racial discrimination in selection of the venire violates a defendant's [constitutional] right to equal protection because it denies him the protection that a trial by jury is intended to secure." 476 U.S. at 86, 106 S. Ct. at 1717. In order to make out a prima facie Batson claim of discriminatory peremptory challenges, a petitioner must show "that the totality of the relevant facts gives rise to an inference of discriminatory purpose," including, for example, a "pattern of strikes" against jurors of a particular race or a "prosecutor's questions and statements during [the] voir dire." Id., 476 U.S. at 94, 96-97, 106 S. Ct. at 1721, 1723.[6]

---

[5] Even if procedurally viable, these claims would still fail on their merits. Whatever prospective jurors may have been dismissed by nonjudicial personnel, petitioner argues only that such conduct violates state law. See Engle v. Isaac, 456 U.S. 107, 121 n.21, 102 S. Ct. 1558, 1568 n.21 (1982) ("We have long recognized that a mere error of state law is not a denial of due process.") (internal quotation marks and citation omitted); Carter v. New York, No. 09-CV-3680, 2010 U.S. Dist. LEXIS 35403, at *6 (E.D.N.Y. Apr. 8, 2010) ("Federal habeas review does not extend to alleged errors of state law."). Indeed, even under New York law, the conduct may be acceptable. See N.Y. Judiciary Law §§ 502, 517(a)(1) (permitting the commissioner of the jurors to excuse prospective jurors from service). As for petitioner's other claim, "[a]n impermissible variance occurs when the evidence introduced at trial 'broadens the basis of conviction beyond that charged in the indictment.'" Muller v. Senkowski, 6 F. App'x. 58, 60 (2d Cir. 2001) (quoting United States v. Patino, 962 F.2d 263, 265 (2d Cir. 1992)). Here, the proof at trial was wholly consistent with the charges in the indictment.

[6] After a movant makes out a prima facie case, "the burden shifts to the State to come forward with a neutral explanation" for the peremptory challenges. Batson, 476 U.S. at 97, 106 S. Ct. at 1723. If a neutral explanation is proffered, the prosecution must show an absence of pretext in its challenges by "giv[ing] a 'clear and reasonably specific' explanation of his 'legitimate reasons' for exercising [them]." Id. at 98 n.20, 106 S. Ct. at 1724 n.20 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 258, 101 S. Ct. 1089, 1096 (1981)); see also Miller-El v. Cockrell, 537 U.S. 322, 324, 123 S. Ct. 1029, 1032 (2003) (explaining that "the prosecutor's race-neutral explanations [need] to be credible"). Here, the state courts found only that petitioner failed to make out a prima facie case, so the Court need not address the remainder of the Batson analysis.

Although Batson speaks to prohibiting *racial* discrimination, its progeny have extended the holding to barring peremptory challenges on the basis of ethnicity and sex. See Rivera v. Illinois, 129 S. Ct. 1446, 1447 (2009); United States v. Martinez-Salazar, 528 U.S. 304, 306, 120 S. Ct. 774, 776 (2000) ("Under the Equal Protection Clause, a [party] may not exercise a peremptory challenge to remove a potential juror solely on the basis of the juror's gender, ethnic origin, or race."). However, federal law has not extended the Batson protection to *combinations* of race and sex; although peremptory challenges based on a particular race and sex combination may be outlawed under New York law, see People v. Garcia, 217 A.D.2d 119, 636 N.Y.S.2d 370 (2d Dep't 1995), such a prohibition is not relevant here. See Covington v. Lord, 275 F. Supp. 2d 352, 359 (E.D.N.Y. 2003), aff'd, 111 F. App'x 647 (2d Cir. 2004) ("The Supreme Court has not heretofore recognized that the combination of race and gender, such as 'black women,' may establish a cognizable group for Batson purposes."). Sandy, critically, does not argue or offer record support on this petition – nor did he in state court – that the prosecution challenged jurors on the basis of their race alone, or sex alone, but *only* the combination of the two characteristics. As a result, he fails to state a violation of clearly established federal law, and habeas relief is not appropriate under AEDPA. For this reason, petitioner's Batson claim must be, and is, denied.

D. **"Reasonable Doubt" Instruction**

Finally, petitioner argues that he was denied a fair trial because the court's omission of a paragraph about "actual doubt" from the model reasonable doubt jury instruction distorted the charge's meaning. He does not otherwise challenge the content or propriety of the jury charge.

Petitioner has a heavy burden to demonstrate that the reasonable doubt charge was so fraught with error as to merit habeas relief. "In only one case ha[s the Supreme Court] held that a definition of reasonable doubt violated the Due Process Clause," in part because "the

Constitution does not require any particular form of words be used in advising the jury of the [proseuction's] burden of proof." Victor v. Nebraska, 511 U.S. 1, 5, 114 S. Ct. 1239, 1243 (1994). Indeed, "a trial court may choose freely either to define reasonable doubt or to refrain from defining it. But if the trial court chooses to define it, then the instructions, 'taken as a whole . . . [must] correctly conve[y] the concept of reasonable doubt to the jury.'" Gaines v. Kelly, 202 F.3d 598, 605 (2d Cir. 2000) (quoting Victor, 511 U.S. at 5, 114 S. Ct. at 1243). In other words, the trial court was under no obligation as a matter of federal law, or apparently New York law, to lift the model instruction wholesale and quote it verbatim.

Here, the trial court's charge as read to the jury unquestionably conveyed a proper concept of the constitutionally requisite criminal standard of proof. It appropriately related to the jurors, *inter alia*, that a reasonable doubt is not a doubt "beyond all possibility," and must be based on the evidence at trial (or its insufficiency), rather than a juror's emotional response or speculation. The two sentences of the model instruction omitted by the court were not so crucial that their absence negated the efficacy of the charge, or significantly distorted its meaning. Certainly the Second Department's holding that the instruction was adequate was not unreasonable in light of Supreme Court precedent. Consequently, this claim fails AEDPA merits review.

## Conclusion

For all of the foregoing reasons, Sandy's petition for a writ of habeas corpus is dismissed with prejudice and the writ is denied. Since Sandy has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. 28 U.S.C. § 2253(c)(2). Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a) that any appeal from this Memorandum and Order would not be taken in good faith and therefore *in forma*

*pauperis* is denied for the purpose of any appeal. See <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45, 82 S. Ct. 917, 920-21 (1962).

The Clerk of the Court is directed to enter judgment and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
July 21, 2010

/S/
_____
ERIC N. VITALIANO
United States District Judge